## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION

KELLY FULTO, individually and on behalf of all others similarly situated,

   *Plaintiff*,

vs.

EXP REALTY, LLC,

   *Defendant*.

_____/

CLASS ACTION

Case No.

JURY TRIAL DEMANDED

## CLASS ACTION COMPLAINT

1. Plaintiff Kelly Fulto ("Plaintiff") brings this action against Defendant eXp Realty, LLC ("Defendant") to secure redress for violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

## NATURE OF THE ACTION

2. Defendant is a real estate brokerage company. To promote its services, Defendant aggressively solicits consumers through telephonic sales calls without consent and irrespective of affirmative requests to stop repeatedly blasting consumers with unwanted text messages.

3. Defendant and its agents do so through an automated system for selecting or dialing the phone numbers to which it places the unwanted telemarketing calls.

4. Moreover, Defendant defies clear federal law by calls to phone numbers that have been listed on the Do-Not-Call Registry.

5. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct and statutory damages on behalf of herself and members of the class.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331, because this action arises under federal law, namely 47 U.S.C. 227. The Court has supplemental jurisdiction over the FTSA claims pursuant to 28 U.S.C. 1367.

7. Defendant is subject to personal jurisdiction in Florida because this suit arises out of and relates to Defendant's contacts with this state. Defendant made or caused to be made telephonic sales calls into Florida in violation of the TCPA. Plaintiff received such calls while residing in and physically present in Miami-Dade County, Florida.

8. Venue for this action is proper in this Court pursuant to 28 U.S.C. 1331(b) because a substantial part of the events giving rise to the claim occurred in this district.

## PARTIES

9. Plaintiff is a natural person who, at all times relevant to this action, was a resident of Miami-Dade County, Florida.

10. Defendant is a Washington limited liability company whose principal office is maintained in Siesta Key, Florida. Defendant directs, markets, and provides its business activities throughout the State of Florida and the United States.

11. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and vendors of Defendant.

## FACTS

12. Beginning on or about February 18, 2022, Defendant began bombarding Plaintiff with telephone solicitations to Plaintiff's number ending in 0597 (the "0597 Number"). The message did not include instruction on how to opt-out of future messages:



13. Plaintiff did not provide prior express written consent to receive any solicitation calls from Defendant or its agents. And on February 18, 2022, Plaintiff affirmatively expressed to Defendant that she wanted Defendant to stop soliciting her by asserting "Please remove my contact. You dont have my permission to message me" in an attempt to opt-out of any further text message communications with Defendant.

14. Despite Plaintiff's use of clear opt-out language, Defendant ignored Plaintiff's opt-out demand and sent Plaintiff yet another telemarketing text message on February 22, 2022, a screenshot of which is below:



15. Plaintiff immediately responded to Defendant by repeating her previous demand that Defendant stop sending the telemarketing messages: "Please remove my contact. You dont have my permission to message me."

16. Nevertheless, Defendant persisted. Despite Plaintiff's continued use of clear opt-out language, Defendant continued to send telemarketing text messages on March 17, 2022, April 4, 2022, and April 5, 2022:



17. Defendant's text messages were transmitted to Plaintiff's cellular telephone, and within the time frame relevant to this action.

18. Defendant, or an agent for which Defendant is responsible and vicariously liable, caused the telephone solicitations to be sent to Plaintiff.

19. Defendant purchases phone numbers that have been placed on "lead lists" and provides them to its agents. The entire point of the "lead lists" that Defendant purchases is to provide the phone numbers of consumers with whom Defendant and its agents have no relationship (otherwise, of course, there would be no need to purchase such numbers from third parties), meaning that can be no consent given to Defendant or its agents to place the telemarketing text messages.

20. Defendant has control and final decision-making power of the scope of telemarketing campaigns conducted by its agents, including the messages sent to Plaintiff and Class Members.

21. Defendant has the ability and right to start and stop text message marketing campaigns conducted by its agents.

22. Defendant authorizes its agents to use Defendant's trade name, trademark, and/or service mark when advertising and promoting Defendant's services. Certainly, a consumer would reasonably believe Defendant's broker agents are acting as Defendant's agent given the use of Defendant's name, website, and brand.

23. Defendant approved (or ratified) the text message sent to Plaintiff and the class members, implicitly so at minimum.

24. Defendant continued to accept the benefits of the marketing activities conducted by its agents, and have generated considerable profits directly as a result of the telemarketing activities described herein.

25. Defendant extensively trains, mentors, and provides tools to its broker agents, including in how to effectively (from Defendant's perspective) market and place "cold calls" to consumers.

26. Defendant provides to its broker agents the software and platform through which to place the telemarketing calls via the automated system for selecting or dialing numbers that Defendant provides.

27. Defendant trains and teaches its broker agents on how to use the automated system to place telemarketing calls en masse to consumers with whom the broker agents have no prior

relationship or contact. Defendant also provides technical support to broker agents who have difficulties utilizing the software and system to place the mass telemarketing campaigns.

28. When Defendant and its agents purchase lead lists, they do not check such lists against the Do-Not-Call Registry.

29. Defendant knew or should have known that its broker agents were placing—and intended for its broker agents to place—calls via an automated system, to place calls to phone numbers listed on the Do-Not-Call Registry, and to place calls to consumers notwithstanding their affirmative request for the broker agents to stop doing so.

30. Moreover, Defendant hosts conventions and conferences in which it contracts with various vendors who provide automated dialing systems and other products to be utilized to place telemarketing campaigns to consumers with whom the brokers have no relationship and irrespective of opt-out requests or inclusion on the Do-Not-Call Registry. Some of these vendors are companies who market that they provide automated systems for selecting and dialing numbers to be called from prepopulated and uploaded lead lists of numbers, selecting or dialing hundreds and even thousands of numbers simultaneously.

31. Defendant has explicitly or implicitly manifested intent to be bound by the legal consequences of the broker agents' telemarketing acts and retains the benefit Defendant derives from the broker agents' telemarketing acts.

32. Defendant instructs and requires the broker agents to use Defendant's business name and branding in telemarketing text messages. Defendant also requires the broker agents to obtain approval from Defendant of telemarketing messages and campaigns, and to keep Defendant informed of any progress and activities.

33. Additionally (or alternatively), Defendant is liable because they are in a joint venture with the broker agents. Through use of Defendant's name, branding, training materials, instructions, and so forth, Defendant and its broker agents are joint venturers in seeking to increase sales and profits through broker services in the buying and selling of property.

34. Defendant's text messages constitute telemarketing because they encouraged the future purchase or investment in property, goods, or services, i.e., using Defendant and its agents as brokers in buying and selling real estate.

## THE TCPA AND THE FTSA

35. Congress passed the TCPA in 1990 in an attempt to prevent and provide redress for telemarketing practices so universally disliked by its constituents. To paraphrase a recent Supreme Court decision, while United States citizens do not agree on much, one thing on which they do agree is that telemarketing is, putting it mildly, a terrible annoyance.

36. Among the things the TCPA and its attendant regulations prescribe is (i) placing unwanted calls via an "automatic telephone dialing system" (ATDS); (2) placing telemarketing calls to phone numbers listed on the Do-Not-Call Registry; and (3) placing telemarketing calls to consumers who have affirmatively requested that the telemarketer stop placing calls to their numbers.

37. As for the first requirement, the definition of an ATDS was famously convoluted. As one court (charitably) put it: "Clarity, we lament, does not leap off this page of the U.S. Code. Each [possible] interpretation runs into hurdles." *Glasser v. Hilton Grand Vacations Co., LLC*, 948 F.3d 1301, 1306 (11th Cir. 2020). But in any event, until recently, the general consensus is the TCPA's definition of ATDS encompassed automated systems that, without human intervention, selected numbers to be called from out of a prepopulated list that had been uploaded into the system.

38.     The general consensus[1] is that interpretation was rejected by the Supreme Court in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163 (2021), and that, now, the ATDS definition cannot be interpreted encompassing systems that automatedly select numbers from prepopulated uploaded lists—instead, the ATDS definition only encompasses systems that automatically ***generate*** the numbers to be called.

39.     Of course, few dialing systems simply make up a string of numbers to which a telemarketing call will be placed. As such, this understanding of Duguid would mean that the TCPA does not restrict 99% of automated telemarketing calls.

40.     For this reason, the Florida legislature stepped into the void, explaining that given this perceived significant narrowing of the TCPA, the Florida legislature amended the FTSA to add a private cause of action to go along with a simple straightforward proscription: Telemarketers cannot place telephonic sales calls via "an automated system for the selection or dialing of telephone numbers" to be called. Fla. Stat. § 501.059(8)(a).

41.     This is precisely what Defendant and/or its agents did: place telemarketing calls en masse to consumers via software and programs that automatedly select (out of an uploaded purchased list) and dial phone numbers to which it places the telemarketing sales calls.

42.     Moreover, upon information and belief, Defendant does not have a written policy for maintaining an internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(1).

---

[1] Not everyone agrees with this interpretation of the Supreme Court's holding in *Duguid*, and Plaintiff expresses no opinion on the question. What is relevant for this Complaint—and the forthcoming explanation of Florida law, i.e., the FTSA—is that most people understood *Duguid* to foreclose an interpretation of ATDS that encompasses an automated system that selects numbers to be called from a prepopulated list.

43.     Upon information and belief, Defendant does not inform and train its personnel engaged in telemarking in the existence and the use of any internal do not call list pursuant to 47 U.S.C. § 64.1200(d)(2).

44.     At no point in time did Plaintiff provide Defendant with her express written consent to be contacted.

45.     Even if Defendant had express consent to contact Plaintiff for marketing purposes, that consent was expressly revoked when Plaintiff responded with her opt-out request on February 18, 2022.

46.     Plaintiff is the subscriber and sole user of the 0597 Number and is financially responsible for phone service to the 0597 Number.

47.     Plaintiff's number ending in 0597 has been registered on the national do-not-call registry since July 15, 2015, and at all times relevant to this action.

48.     The text messages originated from telephone number 786-833-7399, a number which upon information and belief is owned and operated by Defendant or on behalf of Defendant.

49.     Defendant's unsolicited text messages caused Plaintiff actual harm, as seen, inter alia, in the time wasted in responding to the text messages to demand (unsuccessfully, it turns out) that Defendant stop sending the text messages.

## CLASS ALLEGATIONS

**PROPOSED CLASS**

50.     Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23.

51.     Plaintiff brings this case on behalf of and seeks to represent the following Classes:

> **Failure to Stop Class:** All persons within the United States who, within the four years prior to the filing of this Complaint through the date on which an Order granting certification is entered, were sent a text message from Defendant and/or its broker agents, to said person's

>   cellular telephone number *after* making a request to Defendant to not receive future text messages.
>
>   **Failure to Stop Subclass**: All members of the Failure to Stop Class who are Florida residents.
>
>   **Do Not Call Registry Class**: All persons in the United States who, within the four years prior to the filing of this action through the date on which an Order granting certification is entered, (1) were sent more than one telemarketing text message by or on behalf of Defendant within any 12-month period; and (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days.
>
>   **Automated System Class**: All Florida residents who, from July 1, 2021, through the date on which an Order granting certification is entered, were sent telephonic sales calls via an automated system for the selection or dialing of numbers to be called.

52. Defendant and its employees or agents are excluded from the Class. Plaintiff does not know the number of members in the Class, but believes the Class members number in the several thousands, if not more. Plaintiff reserves the right to modify or clarify the Class definitions based on facts learned through discovery as allowable by law.

### NUMEROSITY

53. Upon information and belief, Defendant has placed violative calls to cellular telephone numbers belonging to thousands of consumers throughout the United States after they had requested to be opted-out and/or while they were listed on the national do-not-call registry, and placed thousands of violative calls via an automated system for selecting or dialing the numbers to be called. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

54. The exact number and identities of the Class members are unknown at this time and can only be ascertained through discovery. Identification of the Class members is a matter capable of ministerial determination from Defendant's call records.

### COMMON QUESTIONS OF LAW AND FACT

55. There are numerous questions of law and fact common to the Class which predominate over any questions affecting only individual members of the Class and are subject to common answers. Among the questions of law and fact common to the Class are:

   a) Whether Defendant violated 47 C.F.R. § 64.1200(d);
   b) Whether Defendant violated 47 C.F.R. § 64.1200(c);
   c) Whether Defendant's conduct was knowing and willful;
   d) Whether Defendant keeps records of text recipients who revoked consent to receive texts.
   e) Whether Defendant has any written policies for maintaining an internal do not call list.
   f) Whether Defendant placed the telephonic sales calls via an automated system for the selection or dialing of the numbers to be called.
   g) Whether Defendant is liable for damages, under principles of vicarious liability, agency, direct liability, and/or ratification, and the amount of such damages; and
   h) Whether Defendant should be enjoined from such conduct in the future.

### TYPICALITY

56. Plaintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories and arise from sufficiently similar conduct. Plaintiff is not subject to any unique affirmative defenses that threaten to overwhelm the litigation within the meaning of Rule 23(a)(3).

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

57. Plaintiff will fully and adequately assert and protect the interests of the Classes, as she has already demonstrated through retaining competent counsel who have extensive experience litigating

class actions, including TCPA and FTSA class actions. Moreover, Plaintiff understands her duties and role as a class representative and is committed to fulfilling and performing the same. Accordingly, Plaintiff and the undersigned are adequate representatives and will protect the interests of the Classes.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

58. A class action is superior to any other available method for the fair and efficient adjudication of this lawsuit. Individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable: While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

59. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not.

### COUNT I
### Violations of the TCPA, 47 U.S.C. § 227(c)(2)
### (on behalf of Plaintiff and the Failure to Stop Class)

60. Plaintiff incorporates paragraphs 1 through 59 as is fully set forth herein.

61. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

62.     Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet certain minimum standards, including:

> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

47 C.F.R. § 64.1200(d)(3), (6).

63.     Under 47 C.F.R § 64.1200(e) the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers:

> (e) The rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, "Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.

47 C.F.R. § 64.1200(e).

64.     Plaintiff and the Failure to Stop Class members made requests to Defendant not to receive calls from Defendant.

65.     Defendant failed to honor these requests.

66. Upon information and belief, Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of their behalf, pursuant to 47 C.F.R. § 64.1200(d).

67. Because Plaintiff and the Failure to Stop Class members received more than one call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200(d), as described above, Defendant violated 47 U.S.C. § 227(c)(5).

68. Defendant is directly liable for such violations. Alternatively, and as alleged above, Defendant is liable through principles of agency, apparent agency, joint venture, and/or ratification.

69. Plaintiff and the Failure to Stop Class members are entitled to an award of $500.00 in statutory damages for each and every violation pursuant to 47 U.S.C. § 227(c)(5).

70. Plaintiff and the Failure to Stop Class members are entitled to an award of $1,500.00 in statutory damages for each and every knowing and/or willful violation pursuant to 47 U.S.C. § 227(c)(5).

71. Plaintiff and the Failure to Stop Class members are also entitled to and seek injunctive relief prohibiting Defendant's illegal conduct in the future, pursuant to 47 U.S.C. § 227(c)(5).

**COUNT II**
**Violations of Fla. Stat. § 501.059(5)**
**(on behalf of Plaintiff and the Failure to Stop Subclass)**

72. Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

73. Fla. Stat. § 501.059(5) proscribes "telephone solicitor[s] or other person[s]" from placing telephone calls, text messages, or voicemail transmissions to consumers who, prior to such call/text/voicemail, requested not to receive such communications.

74. As previously alleged, Plaintiff and the Failure to Stop Subclass members affirmatively communicated to Defendant and/or its broker agents that they do not wish to receive the telephone calls, text messages, or voicemail transmissions.

75. Nevertheless, Defendant and/or its broker agents persisted in placing such calls to Plaintiff and the Failure to Stop Subclass members.

76. Defendant's failure to honor such affirmative requests constitutes a violation of Fla. Stat. § 501.059(5).

77. Defendant is directly liable for these violations. Alternatively, for the reasons alleged herein, Defendant is liable through principles of agency, apparent agency, joint venture, and/or ratification.

78. As such, Plaintiff and the Failure to Stop Subclass members are entitled to damages of $500.00 for each violation, $1,500.00 for each willful or knowing violation, and injunctive relief, pursuant to Fla. Stat. § 501.059(10).

**COUNT III**
**Violations of 47 U.S.C. § 227**
**(on behalf of Plaintiff and the Do Not Call Registry Class)**

79. Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

80. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

81. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

82. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

83. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

84. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry more than thirty days prior to receiving the violative calls.

85. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

---

[2] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

86. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

87. Defendant is directly liable for such violations. Alternatively, for the reasons set forth herein, Defendant is liable through principles of agency, apparent agency, joint venture, and/or ratification.

**COUNT IV**
**Violations of Fla. Stat. § 501.059(8)**
**(on behalf of Plaintiff and the Automated System Class)**

88. Plaintiff incorporates paragraphs 1-59 as if fully set forth herein.

89. As set forth in Fla. Stat. § 501.059(10), "[a] person may not make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers" without the called party's prior express written consent.

90. A "telephonic sales call" includes "telephone calls, text messages, and voicemail transmissions[.]" Fla. Stat. § 501.059(1)(j).

91. Nevertheless, Defendant and/or its broker agents did precisely that by making telephonic sales calls en masse and simultaneously to thousands of Florida consumers via a software program that automatically selected or dialed the called phone numbers from a prepopulated and uploaded leads list.

92. Plaintiff and the Automated System Class members did not provide prior express written consent to receive these telephonic sales calls.

93. Defendant is directly liable for these violations. Alternatively, for the reasons set forth herein, Defendant is liable pursuant to principles of agency, apparent agency, joint venture, and/or ratification.

94. As such, As such, Plaintiff and the Failure to Stop Subclass members are entitled to damages of $500.00 for each violation, $1,500.00 for each willful or knowing violation, and injunctive relief, pursuant to Fla. Stat. § 501.059(10).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes;

c) An order declaring that Defendant's actions, set out above, violate the TCPA and/or the FTSA, respectively;

d) An injunction ordering Defendant to (i) cease all unsolicited text messaging activity placed via an automated system for selecting or dialing called numbers, (ii) cease placing telemarketing text messages to numbers listed on the Do-Not-Call Registry absent express written consent to receive such messages, (iii) create internal procedures compliant with 47 C.F.R. 64.1200(d), and (iv) honor requests from consumers to not receive phone calls, text messages, and/or voicemail transmissions from Defendant and/or its agents;

e) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff and Class Members hereby demand a trial by jury on all triable issues.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases or other itemizations associated with the allegations herein, including all records, lists,

electronic databases or other itemizations in the possession of any vendors, individuals, and/or companies contracted, hired, or directed by Defendant to assist in sending the alleged communications.

Dated: July 6, 2022

Respectfullly,

/s/ Jake Phillips
**NORMAND PLLC**
Jacob Phillips, Esq.
Florida Bar No. 0120130
3165 McCrory Place, Ste. 175
Orlando, Florida 32803
Telephone: 407-603-6031
Jacob.phillips@normandpllc.com
Ean@normandpllc.com

**SHAMIS & GENTILE, P.A.**
Andrew J. Shamis, Esq.
Florida Bar No. 101754
ashamis@shamisgentile.com
Garrett O. Berg, Esq.
Florida Bar No. 1000427
gberg@shamisgentile.com
14 NE 1st Ave., Suite 705
Miami, Florida 33132
Telephone: 305-479-2299

**EDELSBERG LAW P.A.**
Scott Edelsberg, Esq.
Florida Bar No. 0100537
20900 NE 30th Ave., Suite 417
Aventura, Florida 33180
Telephone: 305-975-3320
Email: scott@edelsberglaw.com

*Counsel for Plaintiff and the Class.*